IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MYLAN, INC. and MYLAN PHARMACEUTICALS, Plaintiffs, v. BOEHRINGER INGELHEIM INTERNATIONAL GMBH and BOEHRINGER INGELHEIM PHARMACEUTICALS, INC., Defendants. | Civil Action No. 09-990 |

MEMORANDUM and ORDER

Gary L. Lancaster,
Chief Judge.                                          March 24, 2010

This is an action alleging violations of federal and state antitrust laws, and state common law. Plaintiffs, Mylan, Inc. and Mylan Pharmaceuticals ("Mylan"), allege that defendants, Boehringer Ingelheim Pharmaceuticals, Inc. and Boehringer Ingelheim International GmbH [1] ("Boehringer"), attempted to unlawfully eliminate Mylan as a competitor by taking deliberate steps to

---

[1] Boehringer Ingelheim International GmbH has joined in Boehringer Ingelheim Pharmaceutical Inc.'s motion to transfer [Doc No. 39]. Boehringer Ingelheim International GmbH contends, however, that this court does not have personal jurisdiction over it and has filed a motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(2)[Doc. No. 59]. The Court of Appeals for the Third Circuit has held that a "[Section] 1404(a) transfer was available even though there was no personal jurisdiction." Lafferty v. Riel, 492 F.3d 72,80(3d Cir. 2007)(discussing United States v. Berkowitz, 328 F.2d 358, 361 (3d Cir. 1964)). Accordingly, we may entertain the motion to transfer of both defendants, despite the pendency of defendant Boehringer GmbH's motion to dismiss for lack of personal jurisdiction.

wrongfully prevent Mylan from manufacturing the generic form of Boehringer's name brand drug, Mirapex. Mylan brings this suit as an action for damages for Boehringer's violation of Section 2 of the Sherman Act, 15 U.S.C. § 2. Mylan further brings suit pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15, and the laws of the state of West Virginia and the Commonwealth of Pennsylvania. Mylan claims that Boehringer attempted to monopolize the market for Mirapex by engaging in, <u>inter alia</u>, an elaborate scheme to obtain and enforce an invalid patent. Pending before the court is Boehringer's motion to transfer this matter to the United States District Court for the District of Delaware pursuant to 28 U.S.C. § 1404(a) [Doc. Nos. 23, 39], and Mylan's response thereto [Doc. No. 58[2]].

In support of its motion, Boehringer claims that this antitrust litigation arises out of, and is inextricably intertwined with, patent infringement litigation which it filed against Mylan and another corporation in 2005 in the United States District Court

---

[2] Several class action complaints against Boehringer were filed in this court after Mylan filed this action. These actions were filed by "direct purchasers" of Mirapex (<u>See</u> <u>Meijer, et al. v. Boehringer, et al.</u>, Civ. Act. No. 09-1085) and "end-payors" of Mirapex (<u>See</u> <u>Carver, et. al v. Boehringer, et. al</u>, Civ. Act. No. 09-1044). Boehringer filed a motion to transfer all cases, and plaintiffs' jointly opposed the motion. On January 29, 2010, the direct purchaser and end payor actions were voluntarily dismissed pursuant to Fed.R.Civ.P. 41(a)(1). <u>See</u> Civ. Act. No. 09-1085 at Doc. No. 90 & Civ. Act. No. 09-1044 at Doc. No. 66.

for the District of Delaware. Boehringer argues that transfer of this litigation to the United States District Court for the District of Delaware is justified under Section 1404.

Mylan disagrees. Mylan argues that Boehringer bears a heavy burden in its attempt to displace Mylan's choice of forum. Mylan also contends that the Delaware patent litigation is only one of many anticompetitive acts Boehringer committed to prevent Mylan from entering the market. Mylan contends, therefore, that this court should not transfer this case.

For the reasons that follow, we will grant defendants' motion to transfer and order that this case be transferred to the United States District Court for the District of Delaware, forthwith.

I.  BACKGROUND

We accept the following material facts as true solely for the purpose of deciding Boehringer's motion to transfer.

Plaintiff, Mylan, Inc., is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania and has its principal place of business in Canonsburg, Pennsylvania. Plaintiff, Mylan Pharmaceuticals, Inc., is a corporation organized and existing under the laws of the state of West Virginia and has its principal place of business in Morgantown, West Virginia. Defendant, Boehringer Ingelheim Pharmaceuticals, Inc., is a corporation organized and existing under the laws of the State of

Delaware, and has its principal place of business in Connecticut. Defendant, Boehringer Ingelheim International GmbH, is a limited partnership organized and existing under the laws of Germany, and has its principal place of business in Ingelheim, Germany.

Boehringer manufactures a brand name drug called Mirapex. Mirapex is made from a compound of pramipexole dihydrochloride. Mirapex indicated for the treatment of Parkinson's Disease and Restless Leg Syndrome. Mylan filed this antitrust case against Boehringer claiming that Boehringer took a number of actions that unlawfully prevented Mylan from developing and marketing a generic pramipexole dihydrocholoride drug in violation of the Sherman Act, the Clayton Act, and the laws of the Commonwealth of Pennsylvania and the state of West Virginia.

First, Mylan contends that Boehringer obtained U.S. Patent No. 4,866,812 (the "'812 patent") for a pramipexole dihydrochloride compound which Mylan claims Boehringer knew or should have known was invalid because it had previously received patent protection - through U.S. Patent No. 4,843,086 (the "'086 patent") - for the same compound. Second, Mylan contends that Boehringer listed the allegedly invalid '812 patent in the FDA's Orange Book and sought a five-year extension of the allegedly invalid '812 patent to raise barrier entries to Mylan's generic drug. Third, Mylan contends that Boehringer sued Mylan and Barr Laboratories, Inc., ("Barr"), for violating the allegedly invalid

4

'812 patent furthering barring the entry of the generic version of Mirapex.[3]

In 2005, Boehringer brought patent lawsuits against Mylan and Barr in the United States District Court for the District of Delaware. On January 31, 2006, these actions were consolidated before the Honorable Joseph J. Farnan, Jr. ("the Delaware patent infringement lawsuit"). On June 26, 2008, the court declared the '812 patent invalid, finding evidence of nonstatutory double patenting with respect to the '086 patent and entered judgment against Boehringer. Boehringer appealed the court's decision to the Court of Appeals for the Federal Circuit. Boehringer Ingelheim Int'l GmbH v. Barr Labs Inc., et al., 562 F.Supp.2d 619 (D. Del. 2008) rev'd by Boehringer Int'l GmbH v. Barr Laboratories, Inc., 592 F.3d 1340 (Fed.Cir. 2010).

While on appeal, Barr entered into a settlement agreement with Boehringer. Barr agreed: (1) not to contest the appeal, (2) to forego its right to launch a competing product until 2010, and (3) to enter into a separate business deal with Boehringer.[4]

---

[3] Mylan asserts Boehringer took other actions to prevent Mylan from selling the generic form Mirapex, but these are not germane to our decision.

[4] In its complaint, Mylan explains that Barr was the first company to be ready to sell a generic version of Mirapex. Mylan further avers that because Barr was first, Barr had a right, under the law, to be the exclusive seller of the generic version of Mirapex for 180 days. Mylan would have had to wait until the 180 expired before selling its own

Thereafter, Mylan and several other plaintiffs filed antitrust lawsuits in this court, claiming that Boehringer violated the Sherman Act, the Clayton Act and state antitrust laws by bringing the Delaware patent infringement lawsuit in furtherance of an overall scheme to monopolize.[5] Specifically, Mylan's antitrust lawsuit alleges that Boehringer's '812 patent was invalid and unenforceable. Mylan claims that Boehringer knew the patent was invalid but Boehringer still sought an extension of the '812 patent and pursued "baseless" patent infringement lawsuits against Mylan and Barr.

In addition to the patent infringement lawsuit filed in the United States District Court for the District of Delaware, Boehringer also filed a patent infringement lawsuit against Mylan in the United States District Court for the District of New Jersey. This lawsuit related to the strength of the generic drug for Mirapex. The court dismissed the lawsuit on the basis of the prior decision in the Delaware patent litigation. Boehringer appealed the court's decision to the Court of Appeals for the Federal Circuit, which in turn stayed the matter pending its decision on the Delaware appeal. According to Boehringer, this action will now

---

[5] generic version. Mylan claims the Barr-Boehringer settlement prolongs Mylan's waiting period.

As set forth in footnote 2, supra, on January 29, 2010, these actions were voluntarily dismissed pursuant to Fed.R.Civ.P. 41(a)(1).

also be remanded to the United States District Court for the District of Delaware. See Brief in Support of Motion to Transfer, [Doc. No. 24], at page 5. Mylan has not disputed that, on remand, there will be two related earlier filed actions pending in the United States District Court for the District of Delaware.

On January 25, 2010, the Court of Appeals for the Federal Circuit issued its opinion. Boehringer, 592 F.3d 1340. The court of appeals first noted that Boehringer did not appeal the district court's determination that the claims of the '812 patent were obvious in view of the '086 patent. Id. at 1345-46. Of the two issues Boehringer did raise on appeal, the court of appeals affirmed the district court's decision on one but reversed the district court on the other. Specifically, the court of appeals affirmed the district court's determination that Boehringer's retroactive terminal disclaimer, filed after the expiration of the earlier patent, was ineffective to overcome invalidity based on obviousness-type double patenting. Id. at 1348. However, reversing the district court, the court of appeals held that under the safe-harbor provision of 35 U.S.C. § 121, the '086 patent could not be used a reference against the '812 patent and thus, consonance was met. Id. at 1354. This reversal by the court of appeals overturned the district court's judgment of invalidity. The court of appeals remanded the matter to the United States District Court for the District of Delaware for further proceedings consistent

with its opinion. Id.

In light of the decision by the Court of Appeals for the Federal Circuit, Boehringer now argues that this action must be dismissed or, at a minimum, transferred. In response, Mylan has filed a motion for a stay of these proceedings pending their request to the Federal Circuit for a rehearing en banc.[6]

## II. STANDARD OF REVIEW

Motions to transfer are governed by 28 U.S.C. § 1404. Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose of this section is "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." Van Dusen v. Barrack, 376 U.S. 612 (1964)(internal quotations omitted). This court has wide discretion "to adjudicate motions for transfer according to an

---

[6] Mylan initially maintained that this action was distinct from the Delaware patent litigation and, therefore, the pendency of Boehringer's appeal was not relevant to the issue of whether this court should grant Boehringer's motion to transfer. Mylan's request for a stay following the decision of the Court of Appeals for the Federal Circuit can only be interpreted as an acknowledgment that the cases are, in fact, related. Procedurally, in light of the court's resolution of the motion to transfer, it would be more appropriate for the transferee court to address the issues raised by the parties in their pending motions.

8

individualized, case-by-case consideration of convenience and fairness." Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988). Request for transfer under § 1404(a) may be granted when venue is proper in both the original and requested venue. Jumara v. State Farm Ins. Co., 55 F.3d 873, 878 (3d Cir. 1995).

III. DISCUSSION

As noted above, section 1404(a) provides this court with broad discretion to transfer a case for the convenience of the parties or witnesses, or in the interests of justice. 28 U.S.C. § 1404(a). Transfer of a case under section 1404(a) applies to antitrust lawsuits. See United States v. National City Lines, Inc., 337 U.S. 78, 81 (1949). Section 1404(a) transfers presuppose that the court has jurisdiction and that the case has been brought in the correct forum. Lafferty v. St. Riel, 495 F.3d 72, 76 (3d Cir. 2007). Transfer is possible, however, even absent personal jurisdiction. Id. at 80. The burden of establishing a need for a transfer rests with the moving party. See, Jumara, 55 F.3d at 879.

Here, the parties do not dispute, and the court finds, that venue is proper in both this court and the United States District Court for the District of Delaware. Thus, transfer of this matter is permissible under 28 U.S.C. § 1404(a).

Boehringer primarily argues that the interests of justice compel transfer to the Delaware district court because that court is already familiar with the facts surrounding the patent case.

Boehringer further argues that transferring this case would be the only way to prevent the possibility of inconsistent outcomes between the patent and antitrust cases. Although Mylan does not disagree that the District of Delaware is an appropriate venue for this antitrust matter, it argues that: (1) its forum choice should be given paramount consideration, and (2) its deference to forum choice is heightened because it chose its home forum when it filed suit in this court. Mylan also argues that application of the Jumara factors, when applied to the facts present here, require this court to deny Boehringer's motion to transfer.

In Jumara, supra, the Court of Appeals for the Third Circuit held that both private and public interests are implicated by the language set forth in 28 U.S.C. § 1404(a). Jumara, 55 F.3d at 879. The court of appeals described private interests as:

> ... plaintiff's forum preference as manifested in the original choice ...; the defendant's preference ...; whether the claim arose elsewhere ...; the convenience of the parties as indicated by their relative physical and financial condition ...; the convenience of the witnesses - but only to the extent that the witnesses may actually be unavailable for trial in one of the fora ...; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)....

Id. (cites omitted). The court of appeals described the public interests as:

> ... the enforceability of the judgment ...; practical considerations that could make the trial easy, expeditious, or inexpensive ...; the relative administrative difficulty in the two fora resulting from court congestion ...; the local interest in deciding

10

>  local controversies at home ...; the public policies of
>  the fora ...; and the familiarity of the trial judge with
>  the applicable state law in diversity cases ....

Id. at 879-80 (cites omitted). These factors, taken together, establish a balancing test we must apply to the unique facts present here.

Applying these principles to this case, we conclude that this case should be transferred. Starting with the private interest factors, Mylan and Boehringer obviously prefer different fora. Mylan contends that it chose this forum because it is its home forum[7] and it has argued that it will be more convenient for their witnesses. Mylan does not suggest, however, that their witnesses would be unavailable if venue rested in the District Court of Delaware. Arguably, as one Boehringer defendant is a Delaware corporation, the claim arose in either forum. Both parties, in terms of both physical and financial condition, may be slightly inconvenienced by a trial in the District of Delaware, whereas a trial in the Western District of Pennsylvania would be marginally more convenient for Mylan. Thus, while the "private factors" do not weigh heavily in favor of one party or the other, they do tip slightly toward Mylan.

---

[7] As Mylan Pharmaceuticals, Inc. is a corporation organized and existing under the laws of the state of West Virginia, with a principal place of business in Morgantown, West Virginia, Mylan could have chosen to file this lawsuit in the United States District Court for the Northern District of West Virginia.

Turning next to the public interest factors, Boehringer argues that, as a practical matter, the District Court of Delaware could handle this antitrust lawsuit more expeditiously than the Western District of Pennsylvania because it is already familiar with the facts of the patent lawsuit. Boehringer also argues that because of: (1) the current and on-going nature of the patent litigation (and as a result of the court of appeals decision there will now be two pending patent cases in the Delaware district court), and (2) the inter-relatedness between the antitrust and patent lawsuits, the Delaware district court is the only forum which will assuredly prevent inconsistent outcomes between the antitrust and patent lawsuits.

Mylan counters that even if the antitrust lawsuit and the patent lawsuit are related, significant substantive differences exist between the antitrust litigation and the patent litigation, such that knowledge of the details of the patent case is of little or no moment in the antitrust matter. Further, Mylan notes that the Hon. Joseph J. Farnan, Jr., who presided over the Delaware patent litigation may retire this summer. Mylan further proffers that since 2006, the District Court of Delaware has been operating with only three active judges and the weighted number of filings per judgeship has grown to emergency levels. Mylan notes that, although this court is also operating without a full bench, this judicial district is not facing emergency status as of this

writing.

We agree with Mylan that the antitrust lawsuit is not inextricably intertwined with the Delaware patent litigation. Mylan cannot, however, dispute that the two cases are not related. Many courts have held that the presence of ongoing related litigation in the proposed transferee court is a compelling factor in favor of transfer. See, e.g., Weber v. Basic Comfort, 155 F.Supp.2d 283, 286 (E.D. Pa. 2001)(noting that "[t]his consideration alone is powerful enough to tilt the balance in favor of transfer even when the convenience of parties and witnesses would suggest the opposite").

Further, although we have great sympathy for the judicial emergency that the United States District Court for the District of Delaware has labored under for the past several years, in light of the decision by the Federal Circuit, the Delaware patent litigation will be remanded to that court, and the New Jersey patent litigation will be remanded for transfer there. We would find Mylan's argument on this point more compelling had the Delaware litigation terminated in their favor. Given that the Delaware patent litigation was filed first, and that the Delaware district court has devoted more than three years and significant resources to the related patent case, we find that the public interest in promoting judicial economy strongly in favors transfer. If these cases continue to be pending in two different courts, the risk of

13

duplicative and/or inconsistent verdicts is very real. We will, therefore, transfer this antitrust matter to the United States District Court for the District of Delaware. An appropriate order follows.

```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE WESTERN DISTRICT OF PENNSYLVANIA
```

MYLAN, INC. and MYLAN           )
PHARMACEUTICALS,                )
    Plaintiffs,              )
                                )
    v.                        )   Civil Action No. 09-990
                                )
BOEHRINGER INGELHEIM            )
INTERNATIONAL GMBH and          )
BOEHRINGER INGELHEIM            )
PHARMACEUTICALS, INC.,          )
    Defendants.               )

## ORDER

AND NOW, this 24th day of March, 2010, IT IS HEREBY ORDERED that Defendants' Motion to Transfer [Doc. Nos. 23 and 39] is GRANTED. The Clerk of Courts is hereby directed to transfer this case to the United States Court for the District of Delaware, forthwith.

BY THE COURT:

_____, C. J.

cc:  All Counsel of Record